# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JESSE AARON DAUL,**

    Plaintiff,

  v.                                                                 **Case No. 18-CV-386**

**LORI BIAGIONI,**

    Defendant.

## REPORT AND RECOMMENDATION

The Prison Litigation Reform Act (PLRA) applies to this case because plaintiff Jesse Daul was incarcerated when he filed his complaint. Under the PLRA, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

According to the Supreme Court, exhaustion of administrative remedies must be done "properly" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). To properly exhaust administrative remedies, prisoners must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

That said, a prisoner is not required to exhaust his administrative remedies if those remedies are not "available." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Administrative remedies will be deemed "unavailable" when prison officials prevent a prisoner from exhausting through affirmative misconduct, such as denying a prisoner necessary forms, destroying a prisoner's submissions, or requiring steps not mandated by regulation or rule. *See Smith v. Buss*, F. App'x 253, 255 (7th Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Kaba*, 458 F.3d at 684; *Dale v. Lappin*, 376 F.3d 739, 742 (7th Cir. 2004); *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002).

On February 28, 2019, defendant Lori Biagioni moved for summary judgment on the basis that Daul did not exhaust the available administrative remedies before he filed his lawsuit. She asserts that there are no documents suggesting that an inmate complaint about the allegations in this case was received. (ECF Nos. 53 at 4-5; 55 at ¶¶ 11-12.) Daul disputes that he did not file an inmate complaint. He argues that the administrative remedies were unavailable because the inmate complaint he filed was returned to him shortly after he submitted it without a date stamp or return letter. (ECF No. 50 at 3.) Because there was conflicting evidence about whether Daul submitted an inmate complaint, the court held an evidentiary hearing on August 1, 2019, to "hear evidence, find facts, and determine credibility." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (citations omitted).

The court found Daul to be credible. His testimony was organized and consistent with his filings in this case, and he acknowledged when he could not

2

remember particular details. He testified that, shortly after Biagioni cleaned his teeth on August 17 or 18, 2016, he prepared an inmate complaint. He could not remember the exact date, but he was confident that he filed the inmate complaint within two days of his dental appointment.

At the time, Daul was housed in the restricted housing unit at Green Bay Correctional Institution (GBCI). As a result, he was dependent on correctional officers to give him supplies and deliver his inmate complaints. The officers would provide him with complaint forms and envelopes. After he completed an inmate complaint, he would slide the envelope under his cell door, after which the correctional officers would deliver the envelope to a locked box for internal mail.

With regard to his complaint relating to the teeth cleaning by Biagioni, Daul explained that he wrote his inmate complaint and waited for officers to distribute supplies so he could get an envelope. Daul agreed that defendant's Exhibit 1 (ECF No. 63-1) is an accurate copy of the envelope inmates are to use to submit inmate complaints. Daul explained that his cell was near the end of the cell block, so the supply cart was often depleted by the time officers reached him. Daul testified that, when he asked for an envelope for his complaint, he was told there were no envelopes left. According to Daul, this was not uncommon.

Daul explained that, because there were no inmate envelopes on the supply cart, he decided to repurpose an envelope he had received from the inmate complaint examiner. The envelopes used by the inmate complaint examiners are different from the envelopes used by the inmates to submit complaints; the inmate complaint

3

examiner envelopes contain responses to inmate complaints (such as rejection letters, recommendations, and returned inmate complaints). Daul crossed out the old information on the envelope, addressed the envelope to the inmate complaint examiner, and wrote his name and other information in the top, left-hand corner. Daul testified that he then slid the envelope under the cell door for delivery to the inmate complaint examiner.

According to Daul, the next day a correctional officer returned the envelope to him. He noted that it did not have a date-received stamp, nor did it appear to have been opened. He opened the envelope and saw that it contained only his inmate complaint. There was no correspondence from the inmate complaint examiner, such as a rejection letter. According to Daul, because his complaint had been picked up the night before at 5 p.m., he did not believe that it had been delivered to the inmate complaint examiner. Instead, he surmised that it had been "plucked" from the mail and returned to him undelivered.

Daul frequently submits inmate complaints. But, at that time, GBCI, where Daul was housed, limited the number of complaints an inmate can submit each week to two. Inmate complaints about health and safety issues were excepted from that limit. Daul testified that he decided not to resubmit the inmate complaint relating to Biagioni, opting to prioritize other complaints.

Jodene Perttu, one of the two inmate complaint examiners at GBCI, testified that, during August and September 2016, she received twelve inmate complaints from Daul (*see* Defendant's Exhibit 3, ECF No. 63-3); none of the complaints were

4

about the misconduct alleged in this case. She testified that an inmate complaint about damage to one's teeth (the misconduct alleged in Daul's amended complaint) would not have been subject to the two-complaints-per-week limit.

To properly exhaust administrative remedies, prisoners must file their inmate complaints in the manner that the institution's administrative rules require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Daul concedes that he used the wrong envelope to deliver his inmate complaint to the inmate complaint examiner. It appears that the person who sorted the mail saw an envelope typically sent by an inmate complaint examiner to an inmate and had it delivered to Daul instead of to the inmate complaint examiner. While Daul's use of the wrong envelope did not lead to his inmate complaint being rejected, it did cause some confusion, which Daul took no steps to remedy.

Daul argues that an officer "plucked" the inmate complaint out of the mail to harass him and prevent him from filing his inmate complaint. That theory is not plausible. An officer wanting to interfere with Daul's complaint would have simply thrown it away or waited until after the fourteen-day filing period had lapsed before returning the envelope to Daul. Instead, the envelope was delivered to Daul the very next day.

Daul acknowledges that, when he received the envelope, he believed the inmate complaint examiner had not received it. He noted that there was no date-received stamp, the envelope appeared unopened, and it did not contain any correspondence from the examiner. At that point, Daul had at least ten days

5

remaining in the fourteen-day filing period in which to resubmit his complaint. He could have waited until the inmate envelopes were stocked on the supply cart so that he could submit his complaint in the proper envelope. Alternatively, he could have made it clearer on the envelope that, despite being an envelope typically used by the inmate complaint examiner, the correspondence was from an inmate to the examiner. Instead, Daul opted not to re-file the complaint.

Daul says he decided not to re-file the complaint because he was frustrated and tired of being harassed. But his explanation is undercut by the fact that he filed a different inmate complaint on August 18, two more on August 22, and two more on September 1. (Defendant's Exhibit 3, ECF No 63-3 at 1.)

Daul also testified that he chose to prioritize other issues above this one. That is his choice to make. However, his choice to pursue complaints about other matters does not support a conclusion that his administrative remedies were unavailable as to his complaint about Biagioni.

Finally, Daul makes much of the two-complaint-per-week limit. However, that policy would have been inapplicable to Daul's inmate complaint about Biagioni's alleged misconduct. He and Perttu both testified that an inmate complaint about damage to one's teeth is a health and safety concern and, therefore, would have been excepted from the two-complaint-per-week limit.

In short, the court finds that there is no evidence to support a conclusion that the administrative remedies were unavailable to Daul. No one prevented Daul from filing his inmate complaint: Daul chose to use the wrong envelope, which led to

6

confusion, and then he chose to prioritize the filing of other inmate complaints over this one. Accordingly, the court finds that he did not exhaust the available administrative remedies before he filed this lawsuit.

**IT IS THEREFORE RECOMMENDED** that the defendant's motion for summary judgment on exhaustion grounds (ECF No. 43) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that this case be **DISMISSED without prejudice**.

For Daul's convenience, the clerk's office will enclose with this order information about how to order a transcript of the hearing.

Daul's attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(2), which allow Daul to file written objections to the court's recommendation within fourteen days of service of the recommendation. Daul's failure to timely file objections with the district court shall result in a waiver of his right to appeal.

Dated in Milwaukee, Wisconsin this 5th day of August, 2019.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge